E-FILED
Wednesday, 11 December, 2024  04:24:52 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **SEAN ROSE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **24-cv-3033-JES** |
| | ) | |
| **NANCY ASHCRAFT, et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

### ORDER

Plaintiff, proceeding pursuant to 42 U.S.C. § 1983 pro se and presently incarcerated at Western Illinois Correctional Center ("Western"), alleges Defendants at Western violated his rights. Plaintiff's Complaint (Doc. 1) was followed by a Motion for Leave to File Amend Complaint (Doc. 13). The proposed amended complaint (Doc. 13, at 2-76) is now before the Court for screening.  Also before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. 11) and Motion to Request Counsel (Doc. 12).

### I. AMENDED COMPLAINT

A.  Screening Standard

The Court must "screen" Plaintiff's amended complaint to determine if Plaintiff states a claim for relief. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory

statements and labels are insufficient—the facts alleged must "state a claim for relief

that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013).

    B. <u>Facts Alleged</u>

Plaintiff sues the following Defendants: Western's Health Care Unit

Administrator ("HCUA") Nancy Ashcraft, Western's Director of Nursing Jamie

Kirkham, Wexford Health Sources Inc. ("Wexford"), Illinois Department of Corrections

("IDOC") Prison Rape Elimination Act ("PREA") Coordinator Ryan Nottingham,

Western's PREA Compliance Managers Melissa Johnson and Monica McClelland, IDOC

Director Rob Jeffreys, and Western's Warden Brittany Greene.

Plaintiff alleges that he was sexually abused by staff at IDOC's Menard

Correctional Center in February 2022, after which he was transferred to Big Muddy

River Correctional Center. He made a PREA complaint on March 9, 2022, and was

transferred to Western on March 11, 2022. The allegations in his PREA complaint were

substantiated by IDOC.

Plaintiff's amended complaint describes an extended period of alleged,

unspecified harassment, poor living conditions, and denial of medical care and

medications following his transfer to Western.

Plaintiff alleges that his medical records substantiate that he was not receiving

prescribed medications. Plaintiff alleges that Defendant Ashcraft falsely claimed, in

response to Plaintiff's grievances, that he had been receiving his medications, and she

did not take any measures to correct the issue. Plaintiff alleges that he directly told

Defendant Kirkham that he was not receiving his medications and she likewise did not take any steps to correct the issue.

Plaintiff alleges that Wexford policies caused him not to be seen by a doctor and not to receive his prescribed medications. Defendant Ashcraft allegedly confirmed that Wexford is chronically short-staffed, that staff are not properly trained, and that they do not keep proper records. Plaintiff alleges that Defendants Ashcraft and Kirkham both stated that medications do not timely arrive from Wexford.

Plaintiff alleges that he suffers from debilitating mental health conditions as a result of long-term sexual abuse and lack of treatment therefor. Defendants Johnson and McClelland were PREA Compliance Manager at Western at different times during the relevant period. Plaintiff alleges that they failed to implement PREA, federal regulations, and IDOC policy, which allegedly allowed retaliation and continued harassment of Plaintiff at Western. IDOC's PREA Coordinator Defendant Nottingham allegedly implemented a policy that IDOC would not engage in retaliation monitoring if a prisoner with a substantiated PREA complaint was subsequently transferred to a different IDOC facility.

Plaintiff alleges that Defendant IDOC Director Jeffreys was aware of the foregoing IDOC policies, and Defendant Warden Greene was responsible for the operation, prison conditions, and policies at Western. Plaintiff filed dozens of grievances regarding the foregoing issues.

C.  <u>Analysis</u>

"'[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Daugherty v. Harrington*, 906 F.3d 606, 611 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "[T]he state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019).

Plaintiff's allegations are sufficient to state claims for deliberate indifference to serious medical needs against Defendants Ashcraft and Kirkham. Plaintiff has adequately alleged that he was suffering from objectively serious medical needs, for which he had been prescribed medication for both mental health and physical diagnoses. Defendants Ashcraft and Kirkham were allegedly aware that Plaintiff was not being treated for these conditions with the prescribed medications, but did not take any corrective actions.

Plaintiff has stated a *Monell*[1] claim against Wexford, based on allegations that Wexford had an official policy or widespread custom of understaffing, improperly training staff, and delaying medications. *See Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016), *quoting Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) ("To hold defendants liable under § 1983 and *Monell*, [a plaintiff] must demonstrate that the

---

[1] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978).

defendants' 'official policy, widespread custom, or action by an official with final decision-making authority was the "moving force" behind his constitutional injury.'").

However, Plaintiff has failed to state a claim against Defendants Johnson, McClelland, and Nottingham. Plaintiff alleges that they failed to properly implement PREA, but PREA does not create a private right of action. *See Closson v. Kohlhepp*, 2021 WL 3363139, at *2 (S.D. Ind. Aug. 3, 2021) (collecting cases). Plaintiff makes general allegations that he was subject to harassment and retaliation by non-parties as a result of failures in the implementation of PREA, but there are no allegations that Defendants Johnson, McClelland, and Nottingham were aware of actual constitutional violations by others or specific risks to Plaintiff such that they can be liable for failure to intervene. *See, e.g., Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 345 (7th Cir. 2019) (plaintiff must allege an underlying constitutional deprivation); *see also Gevas v. McLaughlin* (To support an inference that an official had actual knowledge of a substantial risk of harm, the inmate's complaint to the official typically must identify "a specific, credible, and imminent risk of serious harm.").

Finally, Plaintiff may not proceed with claims against Defendant IDOC Director Jeffreys and Western Warden Greene, due to their lack of personal involvement. To hold Defendants liable under § 1983, Plaintiff must allege that "the defendants were personally responsible for the deprivation of their rights." *Wilson v. Warren County., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016). In addition, processing grievances without personal involvement in the claimed deprivation is insufficient to establish a constitutional violation. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

The amended complaint alleges that Defendant Jeffreys was aware of the PREA policies about which Plaintiff has complained. But, as indicated above, those policies do not give rise to a constitutional violation or another standalone private cause of action. The amended complaint alleges that Defendant Greene was responsible for the operation, prison conditions, and policies at Western, but the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 U.S.C. § 1983. See *Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008) (supervisor liability not permitted under § 1983).

## II. PRELIMINARY INJUNCTION

### A. Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm International v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal*, 682 F.3d 679,

683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

### B. Allegations

Plaintiff alleges that after he was sexually abused at Menard and then transferred to Western he has not been subject to retaliation monitoring, as provided by PREA. Therefore, he continues to be subject to "retaliation in many forms."

Plaintiff seeks an order from this Court mandating an investigation by both the IDOC and a non-IDOC affiliated body into alleged past and ongoing retaliation and abuse alleged in his complaint. He also asks the Court to "put in place some measures to protect [his] health and physical safety."

### C. Analysis

The purpose of a temporary restraining order or preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Association v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). The relief Plaintiff seeks here is somewhat different. The Seventh Circuit has described an injunction that would require an affirmative act by a defendant—here, an investigation and retaliation monitoring by IDOC employees—as a mandatory preliminary injunction. *Graham v. Medical Mutual of*

*Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id*. (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)); see also *W.A. Mack v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (mandatory injunctions very rarely issue, except on the clearest equitable grounds).

In short, Plaintiff's current allegations are insufficient to warrant a preliminary injunction. Plaintiff's request focuses on allegations that PREA is not being properly implemented at Western. The likelihood of success on the merits weighs against the requested injunction, because Plaintiff has not been allowed to proceed on any claim arising out of PREA itself. Similarly, Plaintiff makes very general allegations of retaliation, threats, and harassment, but he includes no specifics whatsoever in either the amended complaint or in this motion. He is not proceeding on the merits of any claims of retaliation or failure to protect. And without further details regarding the nature of any potential threats, there is no basis to find that irreparable harm will result if an injunction is not granted, nor that Plaintiff lacks an adequate remedy at law.

Plaintiffs Motion for Preliminary Injunction (Doc. 11) is therefore DENIED.

### III. COUNSEL

Finally, Plaintiff has filed a motion requesting appointment of counsel. A *pro se* litigant has no right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). However, the federal statute authorizing *in forma pauperis* status provides a court "may request an attorney to represent any person unable to afford counsel." See 28 U.S.C. 1915(e)(1). A court does not have the authority to require an attorney to

accept *pro bono* appointments in civil cases. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).

When confronted with a request for *pro bono* counsel under 28 U.S.C. §1915(e)(1), the district court is to make the following inquiries: (1) whether the indigent plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so; and if so, (2) given the difficulty of the case, whether the plaintiff appears to be competent to litigate it himself. *Pruitt*, 503 F.3d at 654-55.

The first inquiry is a mandatory threshold determination and requires that the plaintiff attempt to obtain a lawyer independently. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). This typically requires writing to several lawyers and attaching the responses received. Plaintiff states in his motion that he has written to dozens of lawyers and legal aid clinics, and he attached as exhibits at least nine responses declining his requests for representation. Therefore, the Court finds that plaintiff has satisfied the first, threshold inquiry.

Turning to the second element of the inquiry, the district court must undertake "the individualized analysis that *Pruitt* requires[.]" *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013). Specifically, the court must consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. This inquiry must be a "practical one, made in light of whatever relevant evidence is available on the question." *Id*. The court should take account of all evidence in the record relevant to the plaintiff's ability to litigate. *Navejar*, 728 F.3d at 696. Such evidence may include

any physical, intellectual, or psychological limitations the plaintiff may have and the practical problems the plaintiff may encounter in gathering evidence from individuals employed by an institution where he is no longer housed. *Navejar*, 718 F.3d at 698.

Assistance in recruiting counsel is appropriate only where the plaintiff shows his case is one of those few in which it appears from the record the legal and factual difficulty exceeds his ability to prosecute. *Pruitt*, 503 F.3d at 654-55. This question is different from whether a lawyer might do a better job. *Id.*

In his motion, Plaintiff indicates that he is a high school graduate. However, he explains that he believes he is not able to represent himself because of mental health instability, trouble concentrating, potential difficulty accessing evidence while imprisoned, and case complexity due to the medical and mental health issues implicated by his claims in this case. Plaintiff lists numerous medications that he is currently taking, including medications prescribed for mental health conditions.

However, upon review of Plaintiff's filings to date, the Court finds no indication that Plaintiff suffers from any deficiency that prevents him from effectively litigating this case at this early stage. In particular, his amended complaint outlines factual allegations in a remarkably clear, logical manner. And although Plaintiff is proceeding on a claim for deliberate indifference to serious medical needs, it arises out of the relatively straightforward allegation that he did not receive his prescribed medications—occurrences about which Plaintiff has firsthand knowledge. Further, Plaintiff's amended complaint makes clear that Plaintiff has kept extensive records, including relevant

grievances and his own medical records and medication administration records. Thus, this case does not appear to be beyond Plaintiff's ability to litigate at this stage.

In sum, Plaintiff has not offered a persuasive reason at this stage of the litigation why he cannot prosecute his case or why his case differs from any other of the many *pro se* plaintiffs who ask for the appointment of counsel in nearly every lawsuit filed. *DeWitt v. Corizon, Inc.*, 760 F.3d 654, 657-58 (7th Cir. 2014); see also *Navejar*, 718 F.3d at 696 (noting the district judge did not consider the plaintiff's assertions of "limited education, mental illness, language difficulties, and lack of access to fellow prisoners or other resources for assistance after his transfer from Stateville" in denying the motion for counsel).

Recruiting *pro bono* counsel in this district is difficult, as the need far exceeds the supply. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("District courts are thus inevitably in the business of rationing a limited supply of free lawyer time."). Although "[a]lmost everyone would benefit from having a lawyer, [] there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014)(internal quotation omitted); *Mejia v. Pfister*, 2021 WL 647085, * 4 (7th Cir. Feb. 19, 2021) ("for its part, the district court found itself having to [choose] how best to allocate scarce resources, for it remains the sad reality that there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.") (internal quotation omitted).

Plaintiff's Motion to Request Counsel (Doc. 12) is therefore DENIED, without prejudice to refiling at a later stage of litigation or should his circumstances change.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion for Leave to File Amended Complaint [13] is GRANTED.**

2. **Pursuant to its merit review of the Amended Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff states an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Ashcraft and Kirkham and a *Monell* claim against Defendant Wexford. Defendants Jeffreys (IDOC Director), Greene, and Johnson, as well as Defendants McClelland and Nottingham (formerly the Doe Defendants) are DISMISSED. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

3. **Plaintiff's Motion for Preliminary Injunction [11] is DENIED.**

4. **Plaintiff's Motion to Request Counsel [12] is DENIED.**

5. **Plaintiff's Motions for Status [10], [14] are MOOT.**

6. **This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for the named Defendants before filing any motions, to give notice to said Defendants and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance on behalf of Defendants will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.**

7. **The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from the date the waiver is sent to file an answer. If Defendants have not filed answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

8. **With respect to a named Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

9. Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by the Defendants. Therefore, no response to the answer is necessary or will be considered.

10. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the clerk. Plaintiff does not need to mail copies of motions and other papers to defense counsel that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the clerk. Plaintiff must mail discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

11. Defense counsel is hereby granted leave to depose Plaintiff and shall arrange the time for the deposition.

12. Plaintiff shall immediately notify the Court, in writing, of any change in mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

13. If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

14. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

15. **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**


Entered this 11th day of December, 2024.

s/James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE